IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT VAN HORN,

      Plaintiff,             No. CIV S-05-1300 KJM

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.         <u>ORDER</u>

/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment, but will remand under sentence four of 42 U.S.C. § 405(g) for further proceedings.

/////
/////
/////
/////
/////

1

I. <u>Factual and Procedural Background</u>

In a decision dated December 17, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of cervical radicular neuralgia, thoracic contusion and residual right shoulder impingement but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff can perform a narrow range of light work with certain postural limitations; plaintiff cannot perform his past relevant work; and based on the Medical-Vocational Rules, plaintiff is not disabled. Administrative Transcript ("AT") 23-24. Plaintiff contends the ALJ

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

2

committed error at step three of the sequential analysis, improperly discredited his testimony, and improperly relied on the grids.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

  A. Step Three Analysis

Plaintiff contends the ALJ committed error at step three of the sequential evaluation. The Social Security Regulations "Listing of Impairments" is comprised of

3

impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Both in the moving papers and his reply, plaintiff asserts in essentially conclusory fashion that he meets or equals Listing 1.02 or 1.04 because of his neck injury and experimental disc replacement surgery. Plaintiff does not even attempt to meet his burden of showing how he meets or equals all the requirements of either of the cited Listings. Plaintiff has not demonstrated the gross anatomical deformity required under Listing 1.02 nor the motor loss required under Listing 1.04. The ALJ specifically considered medical equivalence. AT 19. There was no error in the step three analysis.

  B. Credibility

Plaintiff further contends the ALJ improperly discredited his testimony regarding his limitations. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified he could not work because of neck pain and numbness in his hands and fingers. AT 426, 428. Plaintiff also testified that his medications make it hard for him to concentrate. AT 431. The ALJ rejected plaintiff's allegations that his subjective complaints were completely disabling, but partially credited those complaints by limiting plaintiff to light work with no excessive or repeated bending or twisting and no overhead work or work above the level of the shoulders. AT 21, 23. In doing so, the ALJ noted plaintiff's testimony was inconsistent with the findings on neurological examination performed by Dr. Bacchus just one month after plaintiff's testimony. AT 21, 283-284. Dr. Bacchus noted inconsistent responses on sensory examination and that recent electrophysiologic studies were within normal range but concluded there was a mild amount of neurologic residual. AT 284. The ALJ also noted that

1  many of plaintiff's radiological studies were normal.  AT 19, 20, 202-203 (normal shoulder
2  arthrogram, superior labrum anterior-posterior tear, no evidence of labral detachment, no
3  evidence of rotator cuff tear), 291 (post surgical imaging demonstrated stable artificial disc with
4  mild degenerative changes at C3-C4 and C4-C5).  The ALJ also considered inconsistencies noted
5  by various medical practitioners upon examination, citing specifically the termination of a
6  doctor/patient relationship.  AT 21, 109-110 (irregularities in information conveyed to
7  physician).  Although not specifically cited in the ALJ's decision, review of the whole record
8  demonstrates other inconsistencies as well.  AT 275 (although complaining of right shoulder
9  pain, no discomfort when removing shirt), 276 (returned within five minutes to clinic claiming
10  lost prescription when not originally prescribed amount requested), 132 (seeking permanent
11  disability prior to seeing whether surgery allowed return to profession), 166 (no explanation for
12  hand numbness found by emergency room physicians unless attributable to "Sat[urday] night
13  palsy"), 283 (giveaway weakness).  The ALJ also noted that despite the apparent connection
14  between plaintiff's hand and arm pain and bicycle riding, plaintiff continued to ride his bicycle,
15  demonstrating some degree of functionality.  AT 21.  Although plaintiff relies on his own
16  testimony that he rides his bike only once a week (AT 432), the ALJ properly considered the
17  numerous entries in the medical record over a four year period referencing plaintiff's major
18  activity of bicycle riding.  AT 110, 118, 123, 124, 129, 130, 132, 134, 141, 208, 244, 255, 278-
19  280.  The factors considered by the ALJ were all valid and supported by the record.  The ALJ's
20  credibility determination was based on permissible grounds and will not be disturbed.
21        C.  Grids
22              Plaintiff also contends the ALJ should have obtained the testimony of a vocational
23  expert rather than relying on the grids to find plaintiff was not disabled.  The Medical-Vocational
24  Guidelines ("the grids") are in table form.  The tables present various combinations of factors the
25  ALJ must consider in determining whether other work is available.  See generally Desrosiers,
26  846 F.2d at 577-78 (Pregerson, J., concurring).  The factors include residual functional capacity,

age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[2] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

In a very confusing passage, the ALJ references the residual functional capacity to perform both light work and medium work, yet the findings expressly state plaintiff is limited to a narrow range of light work.[3] See AT 20, ¶ 2; AT 22, ¶ 7; AT 23 (Finding no. 6). The

---

[2] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

[3] 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

neurological consultative examination relied on by the ALJ in assessing plaintiff's residual functional capacity limits plaintiff to light work with certain postural and manipulative limitations.  AT 21, 285-288.  In light of the ALJ's finding that plaintiff can perform only a "narrow" range of light work, reliance on the grids was improper.  There is no basis evident in the record that supports the ALJ's finding that there are a significant number of jobs in the national economy that plaintiff could perform.  AT 22, 24; see SSR 83-14 (use of the grids as framework for evaluating combination of exertional and nonexertional impairments).  Although defendant asserts plaintiff can perform the full range of sedentary work, there also is no basis in the record for this conclusion.  For instance, the regulations note that eighty-five percent of the unskilled sedentary jobs "are in the machine trades[4] and benchwork[5] occupational categories."

---

> when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

[4]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT") is routinely relied on by the Social Security Administration "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

   The DOT notes the category of machine trades "includes occupations concerned with the operation of machines that cut, bore, mill, abrade, print, and similarly work such materials as metal, paper, wood, plastics, and stone. A worker's relationship to the machine is of primary importance. The more complicated jobs require an understanding of machine functions, blueprint reading, making mathematical computations, and exercising judgment to attain conformance to specifications. In less complicated jobs, eye and hand coordination may be the most significant factor. Installation, assembly, repair, and maintenance of machines and mechanical equipment and weaving, knitting, spinning, and similarly working textiles are included." DOT, 6, Machine Trades Occupations.

[5]  Benchwork includes "occupations concerned with the use of body members, handtools, and bench machines to fit, grind, carve, mold, paint, sew, assemble, inspect, repair, and similarly work relatively small objects and materials, such as jewelry, phonographs, light bulbs, musical instruments, tires, footwear, pottery, and garments. The work is usually performed at a set position in a mill, plant, or shop, at a bench, worktable, or conveyor. At the more complex levels, workers frequently read blueprints, follow patterns, use a variety of handtools, and assume responsibility for meeting standards. Workers at the less complex levels are required to follow

8

20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.00(a). It appears from the definitions of these occupational categories that overhead reaching may be involved in some of the jobs administratively noticed by this grid rule. Because the ALJ restricted plaintiff from overhead work or work above the level of the shoulders, it is evident plaintiff cannot perform the full range of sedentary work. The matter therefore will be remanded so that the testimony of a vocational expert may be obtained.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.[6]

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: September 20, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006
vanhorn.ss

---

standardized procedures." DOT, 7, Benchwork Occupations.

[6] Plaintiff requests certain relief in connection with a later filed disability claim. This court has no jurisdiction over that claim until an action regarding that application is properly filed here. Plaintiff also requests the matter be remanded to a different hearing officer. No bias is evident in the ALJ's decision; the court therefore declines plaintiff's request.

9